Madam Clerk, will you please call the case? 322-0517 Stop Northpoint, LLC at all appellants by Richard Linden versus the City of Joliet and Northpoint Development, LLC appellees by Kathy Son. Council, I want to make you aware that Justice Brennan is participating in this case remotely, and he's on the screen, so you may want to, he may ask questions, and you may want to address some of your comments his way. Mr. Linden, you may proceed. Yes, thank you. Good afternoon. May it please the Court. My name is Richard Linden, along with Mr. Fioretti, Robert Fioretti, sitting at the Council table. We represent the plaintiffs in the case. And the main core, we have a number of claims. And the main core of the case is nuisance. And I think a lot of people in this community are aware of what they call the Northpoint Development outside of Joliet, where, you know, this case is really about whether or not the trial court erred when it dismissed our Fourth Amendment complaint under Section 615. And what this case is about is about a nuisance. It's about a humongous development by Northpoint outside of Joliet where they annexed about 4,000 acres of land. And there's a 2020 traffic impact study commissioned by the Village of Manhattan. It shows that this development will add, or predicted to add, additional 10,370 tractor semi-trucks per day, plus another over 50,000 other vehicles to the streets of Joliet. And the streets of Joliet are already congested. If you just drive down I-80 or I-55, you see nothing but semi-trucks. It's really almost like a glass of water. You could have the water filled to the brim. It just can't handle any more water without spilling over. And that's really what this case is about. The size of this development is more than six times the size of Midway Airport, spanning some 2,000 acres. And understandably, there's been intense public opposition to this project by city council hearings. You know, thousands of people attended the hearings, and they held the hearings, and that's one of our claims. And I'm going to stand by the briefs under the Open Meetings Act. But they had zoning planning commission rule at the height of the corona pandemic. No masks were required in violation of Governor Pritzker's executive order. And what's really important is what this case is not about. If you read the trial court's opinion, it really appears that the trial court held us to an improper standard. The trial court ignored the standards of 615. As, you know, justices know, all well-pledged facts must be accepted as true with all reasonable inferences in the plaintiff's favor. And the court disregarded that when they dismissed the case. If you look at the opinion, the court went well, well beyond the complaint. And, you know, cited examples like, well, the streets are already congested, so, you know, plaintiffs don't tell us what the traffic was like before or the dangers before. You're not required in Illinois to plead evidence, and that's what the trial court kind of held us to, which was improper. Our complaint spans more than 200 paragraphs. Now I've got a copy here. We went through a lot with facts. If you look at our complaint, it has more facts than are required. We went beyond what's required under 2-615. And because, you know, the trial court held us to, I think, an improper standard, you know, we pled immense amount of facts, showing the harms that trucks will do. And from a common sense standpoint, it doesn't take a scientist to tell you that 10,000 trucks a day, it's going to cause harm. Counsel, how many plaintiffs are involved in this? I think there's about 50, 52 plaintiffs. Are there addresses or identities indicated anywhere as to their specific impact of this development on them? Ian, glad you asked. Yes, they say a number of the plaintiffs, and the trial court noted in its decision, live contiguous to the development. Most of the residents are a lot of them are from Joliet. The complaint says that a number of the plaintiffs live next to the proposed development or part of the 4,000 acres. So these plaintiffs are affected. A great number of them live very close. Are there any specific plaintiffs who are identified as having? Yes, I could go through the complaint and find that we do indicate which of the plaintiffs. And if you look at our account under the Realtor account, which, you know, we're claiming that the annexation agreement is unenforceable because it's too uncertain and indefinite, there's a problem with it. If you look at the annexation agreement, much of the annexation agreement depends on this traffic impact study. And in somewhat of a related case, I was up on appeal here, a gentleman by the name of John Keegan, who's in court, he's the founder of Stop North Point, he had to do a FOIA request asking Joliet for your traffic impact study. They objected. We had to file suit, went all the way to the public court, and, you know, the decision got affirmed about a month ago. But until that time, Joliet would not even tell us whether or not they had a traffic impact study. You're going to have a development with 10,000 trucks a day, and they just pushed it right through during the pandemic, you know, without insomuch of an environmental study or traffic impact study. And if you look at the agreement, much of the annexation agreement is completely dependent on the obligations of the parties upon this traffic impact study. If you look at it, parts would say, traffic signals, street widening, street improvements, shall be determined based on a traffic impact study. There's no traffic impact study. So, yes, Justice, I'm sorry. I mean, as it relates to that particular issue, what's your response to the counterargument that a traffic impact study done today, for example, might not be so relevant when you're talking about development that might be 10 years in the future, ultimately? It would probably require subsequent impact studies, wouldn't it? To determine which bridges need to be built, which roads need to be expanded, et cetera. Possibly. But I think, you know, you need a traffic impact study. How is the public going to know what's required under the agreement? What are the traffic signals? What roads need to be widened? Maybe it needs to be modified later. But I think it's important to keep in mind, too, that we're talking about 615. The allegations of complaint, whether or not we state a nuisance. What this case is not about, I think the judge at lower court really judged this case under an injunction standard. You know, the question is not whether or not North Point should be enjoined. The question is, should we be allowed to proceed with discovery, present our case? You have to accept all the facts as true. And we do set forth very specifically the harm that's going to ensue with this development. We set forth, you know, the pollution trucks cause. And you multiply that by, you know, thousands of trucks. We set forth in our complaint the decibel levels that trucks cause noise levels. So you take one truck and you're looking at one truck, I believe, every seven minutes, if you do the math, on 10,000 trucks divided by 24, divided by 60, it equates to every seven minutes or seven seconds a truck's going to go by. And we set forth in our complaint the harm that's going to ensue. We set forth that respiratory illnesses are going to develop from people, you know, being exposed to the soot and other air pollution associated with it. We set forth the harm that's going to be done to the Abraham Lincoln Memorial Cemetery. And a number of our plaintiffs are war vets. We have Purple Heart winners or Gold Hearts where they go to this cemetery to visit loved ones. And, you know, trucks have already trampled over headstones and whatnot. So our complaint really details the harm that's going to be stowed upon them. And one thing that we believe the trial court got wrong, and if you look at Joliet too, they pushed, they tried to differentiate our case and say, well, this involves a prospective nuisance and not a current nuisance. And what I'd like to say is the pleading requirements for nuisance are the same, private or public. The pleading requirements make no difference if it's a prospective nuisance or an existing nuisance. As your honors, I'm sure are aware of that. Injunctions are not a cause of action. An injunction is a form of relief here. We allege public nuisance and a private nuisance. The court held us to the standard, well, you're seeking a prospective nuisance, so you don't know exactly what's going to happen. But at the time a prospective nuisance comes to be, when a court has to determine, in order to enjoin a prospective nuisance, you have to show that it's highly probable that the nuisance is going to ensue here. But that's not a pleading requirement. That's a requirement if you get to that stage by an injunction, you have to show it's highly probable. But in order to show a nuisance, we set forth in our briefs what a nuisance is. A public nuisance is something that negatively affects the public's health, safety, or morals, so it causes substantial annoyance, inconvenience, or injury to the public. And both sides here cite the Village of Wilsonville case, and that's 86 Ill Second at page number one. And in the case the Supreme Court sets forth, the elements for a public nuisance are the existence of a public right, a substantial amount of reasonable interference with that right by the defendant, and approximate cause and injury. We set forth facts establishing each of the elements for a public nuisance. Our complaint details the amount of money that's going to have to be expended, that these trucks are going to deteriorate the roads, it's going to cost taxpayers millions of dollars, not counting the health effects to the public, the respiratory. We say people are going to develop strokes and asthma and a whole lot of things. We cite a Medicare study that talks about the harm to people being exposed to vehicle exhaust fumes, especially older adults and children. The effects are profound and we should be allowed to conduct discovery and set forth for the trial court and determine should or should not this project be enjoined. They stopped us before we had a chance. Our complaint is 262 paragraphs. Counsel, your time is up. You will have an opportunity to have rebuttal. Justice Davenport, do you have any further questions? No. Justice Bratton? Okay, thank you, Justice. Ms. Sons? You may proceed. Thank you. Good afternoon. My name is Kathy Sons. I am here on behalf of Eastgate Logistics Park, Chicago, LLC, North Point Development, LLC. I am also arguing on behalf of the City of Joliet. Counsel for the City of Joliet, Christopher Regis, is also here. I'd like to touch on a variety of things, some of which counsel did not touch on but are in the brief. But one thing I would like to clarify is one misstatement, which is that City of Joliet has annexed 4,000 acres of land. They have not annexed 4,000 acres of land. And what they are challenging here is an annexation agreement that does not even encompass 4,000 acres of land. They have alleged that the development is 4,000 acres of land. I'm not sure where that number comes from, but that is not what is in the annexation agreement that is being challenged. Approximately 1,257 acres of land have been annexed. So several things. One of the things that was in the briefs was that the trial court reviewed the wrong complaint. If you read the order, it's clear that he did review the correct complaint. The Fourth Amendment complaint is mentioned 31 times in that order to basically save typing. He copied and pasted parts of an earlier order. But it is very clear, if you read the order, what the court was doing and that he did review the correct complaint. There's some other items in there. There's the Open Meeting Act, which can only invalidate action where the meeting was not open. This was an open meeting. That's not challenged. The question was with respect to wearing masks. And again, the executive order did not require that the municipality enforce it. There was nothing alleged. They couldn't stay away six feet, which is also within the context of the order. Masks are required when you cannot stay six feet away. This was an open meeting, so that is not an issue. With respect to notice, notice was given. Legal was given, the legal description of the land, the pins, and the common address. And there was no allegation that there was any prejudice to any parties. Count 3 alleges that the annexation agreement is unenforceable for vagueness and indefiniteness. There's a few issues there. One is a standing issue. They couched it as a taxpayer suit. They did not allege a taxpayer suit. They did not get permission to file a taxpayer suit. And they never argued in this court that it even is a taxpayer suit. Counselor, can I ask you to go back on the deficient hearing notice? Yes. You're saying that there weren't mismatched pin numbers or incomplete addresses contained in the notice? They have not alleged incomplete addresses. They have alleged that there was a broken pin, maybe two broken pins. And by that, it means that there was part. But there's an official notice and there's an online notice. And the online notice specifically says this is put together from the PDFs. There could be mistakes. That's the one that they attached to their complaint. If you look to the actual notice that was published, there were no broken pins. But even if there were, pins are not required in the notice. It's sufficient if you provide the common address. And again, to cover all bases, we included the legal description and the pins and the common address. So everything was covered, even those that are not required by statute to cover all of those things. And with respect to notice, the law is quite clear that if there's no prejudice, then defective notice isn't even going to be able to invalidate it. No plaintiff alleged that they weren't there, that they were confused, that they didn't show up. They were there. They were able to speak. And so there was no prejudice from it, even if there were a defect, which there was not. With respect to the vagueness and indefiniteness, this is an annexation agreement. It's a contract. It's reviewed under contract law. Plaintiffs are not signatories to it. So under contract law, they have no standing to attack it. Also, the law is clear that the public is not a third-party intended beneficiary, even of a public contract. But if you set aside the standing and the taxpayer issue and all of those issues, it's a 24-page, 25-page document. It outlines all of the various requirements. And again, the basis of theirs is that the traffic study was not done prior to it being signed. There's no requirement that the traffic study be done prior to it being signed. It's sufficiently definite if a court can determine what is required of the parties, and that can clearly be done here. The crux of the complaint, I think we would all agree, though, are the nuisance claims. So I want to get to those. Counsel said that there's no separate claim for a prospective nuisance, and I believe that is not accurate. It is injunctive in nature, but there are aspects of the injunction that must be pleaded. In order to plead a prospective nuisance, the court has set forth in Wilsonville, and Wilsonville was not a pleading case, to be clear. But they are the elements of what constitute prospective nuisance. And case after case will say, you know, in order to establish whatever the cause of action is, you have to plead and prove. So if it's something that you need to prove, you also need to plead it, and they have not done that here. A prospective nuisance, whether public or private, the court has said involves a dangerous probability of injury, highly probable that a nuisance will result if no injunctive action is given, that it clearly appears nuisance will necessarily result, and it is only in extreme cases that it will be granted if the danger is real and immediate. If it's merely a possibility or uncertainty or contingent, no claim can be stated. Now, in this case, there is no high probability that this is going to result in nuisance, either public or private. Again, they've alleged that the development is 4,000 acres. I don't know what all those acres are. The annexation agreement, which is what they are trying to invalidate, is 2,179 acres, of which 1,257 have been annexed. But there are all sorts of contingencies in there, even with the development of that which is annexed. Certainly, that which has not been annexed can't be developed yet. And all of their claims are based on full build-out of this 4,000 acres. I don't know, I've counted some 40 times that they talk about 10,000 trucks in the brief, but that is only at 4,000 acres. So they are not trying to stop that last 1,000 acres, the last 2,000 acres, or even the last 3,000 acres. They're trying to stop development of even one acre. And there are no allegations that if this is fully developed to the point of the annexation agreement, that that would result in a nuisance. And there's no allegation that if they develop the part that's been annexed, that that will constitute a nuisance. And there's certainly no allegation that if the part that could be developed now, because the part that is east of Route 53 cannot be developed until there is some approval for a bridge. And that is held up in litigation. There has been no approval. And so none of that land can be developed now. In order to obtain injunctive relief, you have to show some sort of immediacy, some sort of likelihood. Right now, I'm not sure that there's even a likelihood that this is going to be fully developed, or that the part east of Route 53 would be developed. With respect to the parts that are near the one little residential area in this larger development, that is subject to a PUD that has to be approved. There's been no effort to approve a PUD yet, so that part can't be developed. So there are all of these things that are contingencies that there is no likelihood that we are going to get to the 2,000 acres that Council repeatedly talks about. With respect to private nuisance, it is an invasion of property that is substantial and unreasonable interference with one's interest in the use and enjoyment of one's land. And the Enriched Capital Flood Case makes it clear that it is an interest in land. If you have no invasion of land interests, then you can have no claim for a private nuisance. And as you pointed out or asked, inquired about, there are 55 plaintiffs. Of those, five are alleged to be contiguous to some development. The 4,000 acres, we don't know where those are. None of them are alleged to be directly contiguous to the 2,179 acres that is the subject of the annexation agreement. None of them are alleged to be adjacent to the part that has been annexed. And of the ones that are alleged to be somewhere with respect to contiguous to this 4,000 acres, it's not clear that they live on that land. Most of this land is farmland. One purportedly has livestock on the land and not a residence. So there's nothing to show that this is going to directly interfere with anyone's use and enjoyment of the land. Certainly not with respect to all of the plaintiffs. There's no property interest in the cemetery. A lot of that is based on visiting the cemetery. The cemetery is not a party to this case. And our development is not adjacent to the cemetery. It's actually quite far, well, relatively speaking, it's not contiguous. It's a cross route 53 inch, at least a mile or two away. So none of these things show an invasion of property interest that any of these plaintiffs can allege. With respect to public nuisance, the elements of that are slightly different. There's an existence of a public right, substantial and unreasonable interference with that right by defendant's approximate cause injury. There's no case that says you have the right to be free from traffic. And there are, I mean, that would basically mean there are no Cubs games, Bears games or Taylor Swift concerts. And there's nothing to show that this is a right that they have. No case is cited with respect to that. Generally with public nuisances, it's illegal activity. A lot of times you see it with prostitution or people selling drugs, things of that nature. Their complaint is based wholly on the Joliet Ordinance. They have, I think, realized that they have no claim under that. That was argued at the trial level. At this point, they are only arguing that there was a common law public nuisance, which is not really alleged in their complaint. But in any case, I don't think the facts support that argument. And the cases, one of the main cases with respect to public nuisance is the Willow Springs versus Village of Lamont. That was a far more intense development. It was an industrial development involving zone-heavy manufacturing, construction, demolition, debris, recycling. And the court basically said that there's, you know, these potential negative aspects. Counsel, how can you say that trucks constantly driving past you is a less intense development than manufacturing? Well, first of all, again, it's a larger development. So there's no allegation that these, you know, properties are right next to it. But again, this is public nuisance. There are going to be trucks, there's no doubt. But there's not banging, demolition. There's not all of the things that are associated with heavy manufacturing, which also often involves construction. So again, in this case, there was construction, demolition, debris, all of these things. These are trucks that are traveling along the road. And there's nothing else beyond the trucks that are alleged with respect to that. The other public case is the Wilsonville case, which I think is instructive by way of being distinguishable. That involved toxic waste, a toxic waste dump, where it was built on, and I can't say this word, subsistences, where there's basically caves underneath. And they said, look, this is going to collapse. And once it does, the toxic waste is going to run out. And in fact, it's already a nuisance. There just hasn't been damages yet. There are so many differences between that case and this case that it is instructive in that respect. Thank you. Judge Davenport, do you have any questions? I do not, counsel. Thank you. Justice Brennan? I do not. Thank you. Thank you. Counsel, you may proceed. All right. Thank you, and good afternoon again, Your Honors. But listening to counsel's argument, it really underscores what the trial court did and what they're arguing. Counsel made a big deal that we didn't demonstrate the likelihood of success. Where in Section 615 are you required in a complaint to demonstrate the likelihood of success? What they're doing is looking at the requirements for an injunction. In order to get approval in an injunction, you have to demonstrate that plaintiffs have likelihood of success in the merits. Under 615, you have to accept each and every factual allegation in our 262-paragraph complaint is true. And I'd be here for hours just going through all the harm that we allege. I think you have a very good question about how is the noise of trucks different than a manufacturer. The figures I got wrong, it's really 432 semi-trucks an hour based on 10,000 trucks a day. Just imagine the noise that's going to come from 10,000 trucks a day. Counsel wants to quibble whether or not the annexation agreement is 4,000 acres or 2,179 acres. I know we say in our complaint it's 4,000 acres. Whether it's 4,000 acres or between 100 acres, it's still ginormous in scope and area. Ginormous isn't the word, counsel. I mean, there is a difference. Numbers do matter. Yes. The second amended complaint alleged half of the amount of acreage that's alleged in the fourth amended complaint, correct? I thought we alleged 4,000 acres in our fourth. I can't remember. We did it in the fourth. In the second, it was half that. I'd have to go back and look, but we tried our best to be as accurate as we possibly could. Okay. And I know I read an article in Joliet Patch recently reporting this 4,000 acres. I think there's some dispute, but part of the problem is Joliet has been very secretive in North Point about what they're doing. They purposely, in our mind, kept a lot of the details of this project secret, i.e. the traffic study report. They required a traffic study report we set forth for Dunkin' Donuts drive-through, and yet they're not going to require a traffic impact study for just an enormous facility, whether it be 10,000 trucks, 9,000 trucks a day. It's some number I think everybody has to agree. If it was a million trucks a day, I think everybody would agree that that would be a nuisance. Somewhere between one truck and a million would have to be a nuisance. I mean, 10,000 trucks a day and all the harms that stem from 10,000 trucks a day. We allege in our complaint regarding private nuisance that these trucks and the truck traffic and the pollution and noise and the light pollution is going to make plaintiff's homes unintentable that live close to the development. I believe five of them live allegedly right on the boundaries of the development. North Point has acknowledged that some of the plaintiffs live next to or adjacent to the project. So, in conclusion, we ask that your honors reverse the trial court that our Fourth Amendment complaint does state causes of action for, number one, private nuisance, for public nuisance. And we set forth in our reply brief, and counsel's standing argument regarding whether or not the agreement is enforceable for being uncertain, that was not waived, it wasn't raised at all at the trial level. It was raised for the first time in appeal. We cite case law in our reply brief. We didn't have a chance to address in our opening brief because they never raised it before the trial court, saying that taxpayers do have a right to file suit. And we specifically did this as relators, plaintiffs, and just the plaintiffs that are taxpayers in Joliet. If you look at our reply brief. So, I just want to thank everyone for their time. If you have any questions, I'd be happy to try and answer them. Justice Davenport? No, thank you. Justice Brennan? Thank you, Your Honor. Thank you. Thank you. Thank you, counsel. We will take this case under advisement. We will advise you of our decision in writing as soon as possible.